Muralo v. Barr. Morning and may it please the court. My name is Alyssa Hasbrook and I represent Arthur Murillo, who is the petitioner here and was the respondent below. And this morning I'd like to address two main points. The first is that the Board of Immigration Appeals and the immigration judge erroneously applied an intentional government acquiescence to torture standard. Despite this Court's holding in Kusum, that's all that required is mere willful blindness. And second, that New York first-degree manslaughter is not a Federal crime of violence because it can be accomplished by omission and therefore does not have as an element the use, attempted use, or threatened use of physical force. Now, as to acquiescence, the BIA's suggestion that the I.J. use the correct legal standard is incorrect and should be vacated. Well, let me ask about that because on page 7 of the I.J.'s opinion, there's the sentence, Respondent fears torture by criminals acting in a private capacity. He therefore needs to establish that officials will know of or remain willfully blind to the torture and thereafter breach their legal responsibility to prevent it, and then it cites to Kusum. So what is the why isn't that entitled to considerable weight in figuring out what this opinion says? It's correct, Your Honor, that the Court did cite to Kusum and mention the phrase acquiescence and willful blindness, but it's clear from the remainder of the opinion that the Court did not apply that standard. You can look to the record at 94, where the immigration judge, after the fact inserted into the transcript of the oral decision, the word intentionally twice, writing there's no evidence of record that Belize intentionally has a modest capacity to combat criminal elements operating in that country or intentionally has a modest ability to prosecute. That was in the context of this Pierre decision which dealt with prison conditions and some requirement of intentionality. So that was in the context of discussing that specific case. But as Judge Livingston pointed out, it's not just on that page. I counted three times on separate pages and separate discussions where the IJ mentioned willful blindness, four times mentioned acquiescence, and cited to Kusum, which is the willful blindness case. So how can we conclude from this record that the IJ misunderstood the standard when it's so prevalent in the opinion? Well It's because they made one reference to a lack of intentionality. It doesn't mean that the Court didn't understand that willful blindness was also applicable. This Court in Pierre properly distinguished acquiescence from intentional government conduct, and ultimately, for the immigration judge, it would be irrelevant whether there was evidence of record about these topics unless the immigration judge understood that Belize had to act with intent. And in fact, the deliberate insertion of the word intentionally twice shows that the immigration judge relied on it, else there wouldn't have been reason to insert it after the fact into the transcript of the oral opinion. Wasn't Pierre about, and help me understand the argument, wasn't Pierre about an argument that the conditions in confinement were so horrible that they constituted torture, and those were conditions created by the government itself, right? Correct. So in that context, you're looking to see, you're distinguishing between circumstances in which the government's, the conditions in confinement are horrible just because the government lacks resources to make them better, and circumstances in which the government has created those conditions, right? That's correct. So that's why when I look at page 8 to 9 in the opinion, that, the portion you're relying on, and it's an important portion, I'm trying to understand it, but it begins by saying it is, in this case, somewhat akin to what the Second Circuit dealt with in Pierre. And I read that to suggest that the IJ is saying, I under, this is not Pierre, because here we're talking about not the government itself acting, but third parties and government acquiescence. But still, let me make the point that there's no evidence here, as in Pierre, that the government's incapacities in dealing with the conduct of third parties are intentional, was intentional. So I disagree. Ultimately, Pierre was about whether poor prison conditions in Haiti, prison conditions run by the government, were intended specifically to be torture. Whereas here, Mr. Murillo's argument is not that he will be tortured by the government, but that he'll be tortured by third parties. And so to the extent that there's a specific intent requirement, it goes to an actor, the actor inflicting torture. Here, that's third parties, not the government. So we can also see that this reliance on Pierre is fundamentally off base. So your argument is that the Pierre, in saying this is somewhat akin to Pierre, that just shows that the IJ was confused about this. That's correct, Your Honor. What about the government's argument that because the BIA clearly understood this standard and this de novo review, that it would be a harmless error? This is, in fact, not harmless error, Your Honor, because ultimately, this reliance on an incorrect standard of law caused the Board of Immigration Appeals to affirm immigration judge having overlooked crucial pieces of evidence, evidence that goes to the heart of the inquiry, here that Mr. Murillo's or individuals in circumstances highly similar to that of Mr. Murillo, his associates, Kevin and S.B., and his brother Giovanni, also were murdered upon their return to Belize, also were affiliated with gangs. And these pieces of evidence did not they were not mentioned in the immigration judge's opinion. They were not mentioned by the BIA. And the immigration judge did talk about that the disappearance of the brother was completely speculative, right? Wasn't that in the opinion? I thought I remember seeing that. I don't believe that's in the oral decision, Your Honor. It was mentioned in hearings prior to the opinion. Your Honor, I see that my time has expired. Thank you. May it please the Court. Anita Notoma on behalf of the Attorney General. Good morning, Your Honors, and thank you for the opportunity to appear telephonically. As Judge Livingston and Judge Bianco pointed out, the IJ did not rely on Pierre in denying Petitioner's cat deferral application. As Judge Livingston and Bianco pointed out, the IJ refers to Pierre, and that in this, his reference to Pierre acknowledges the fact that the IJ understood that it was a case about torture and prison conditions. And we know this also by looking at page 91 of the record where the IJ says, in this case, Petitioner has put forth a general affair of harm potential and criminal acts that will be perpetrated against him by unnamed criminal actors engaged in criminal activity or private acts of revenge. This shows that the IJ knew that Petitioner's claim had nothing to do with the government being the torturer in this case, or the government inflicting prison conditions or poor prison conditions on Petitioner. There's nothing in the record to show, as Judge Livingston said, on page 89 of the record, the IJ cites the correct standard for cat. On page 91, the correct standard is stated again. And the immigration judge, looking at it broadly in the context, this is an oral decision where the immigration judge is making findings immediately after a hearing has occurred, and so that's why the decision might flow maybe not as well as if somebody had an opportunity to draft it. But again, the overall, that torture or Pierre language is not dispositive because the Petitioner's cat deferral application or petition was denied based on a failure to show acquiescence to this torture. So, but doesn't citing Pierre, couldn't that reflect some confusion? I mean, it makes it harder to explain your decision delivered orally if you bring Pierre into it than if you just focus on the third party cases. So I agree with your honor, Judge Livingston. I agree with you in the sense that it might seem confusing, and that's why I was saying looking at it again as an oral decision where it's being read or given on the spot. But when you look at the entire decision, look at the IJ summary of the facts where he knew, he outlined the facts stating that it was fear of retaliation from rival gangs, a fear of reprisal by individuals who Petitioner had maybe harmed in the past. And then going to correct, to reiterate the correct standard and looking at that with, again, the overall denial being on requisite, on the acquiescence factor shows that the immigration judge understood what the claim was and the analogy was made that this is not Pierre. This is not a case where the government is the torturer. This is not a state actor issue. It's really, or he said this Pierre is like, you know, this is not Pierre. And again, just to reiterate another point, the BIA looked at it on de novo review, this claim was specifically raised to the board and the board looked at it and said, no, that's not what happened. But again, we will look at it and see under matter of ZZO, the board looks to see if based on the underlying facts, if Petitioner has met requirements for eligibility or rather entitlement to cat deferral. And the board said, no, he didn't reach the acquiescence requirement. And again, if I may, just to go to Petitioner's point about the aggravated felony crime of violence, Petitioner withdrew this claim. I'm sorry. You say, cause I was, wanted to make sure I understood this. You say we don't have to address whether the New York manslaughter conviction is a crime of violence. Is that, is that the government's position? That's correct, your honor. And that's because one, Mr. Murillo was found removable based on his firearm, firearms offense. And this is something he did not raise to the board or contest was not raised before this court in his brief. So his removability has been established. So he's a criminal alien because he's a criminal alien. The court need only to look at any colorable questions of law or constitutional claims. This, and then this aggravated felony crime of violence issue Petitioner in their reply brief on page six, I believe in the footnote number one or two specifically says that they're withdrawing their, any issues or claims for cancellation of removal, as well as withholding under the INA. Sorry, your honor. Ask another question, but to make sure I'm understanding both of your positions, but I understand them to be saying, um, they are, uh, they're seeking not only deferral under the cat, but, um, but also withholding that there are two different standards. And that because of that, we need to address the manslaughter conviction. Am I, that's not petitioner. That's not respondents, um, position, your honor. While I concede that the distinction that petitioner, um, made in their reply brief, that removal, um, for withholding of removal, um, as opposed to cat deferral is slightly different. That is a distinction really without a difference because at bottom, whether it's cat withholding of removal or cat deferral, it's the same standard. Petitioner has to show torture that will be inflicted buyer at the investigation over with consent. He has to show there'll be torture upon his removal rather to believe. So whether or not we're, you know, if the focus is on cat withholding or cat deferral, it's the same standard he has to show. Counsel, they argued in their letter to the court in, um, back in July, uh, last year that to grant terminate a grant of deferral, DHS need only file a motion for hearing to consider the termination, whereas to terminate a grant of withholding under cat, they have to file a motion to reopen, which has certain time and number limits. So they're suggesting that at least at that level, there's a different standard. What's your response to that? Your Honor, I agree with you. There is a difference in, in, in, in how cat withholding, um, as opposed to cat deferral might be terminated. But my point, I guess the government's position is that is a distinction really without a difference, because even if they're pursuing cat withholding, they still have to show before the IJ and before the board that it's more likely or not that she, that petitioner will be tortured if removed. And that takes us back to the same place. So just. Assuming arguendo it's the, the argument is he, uh, petitioner is trying to move forward on the cat withholding, even if it goes back and I'm not saying it should, or suggesting it should, the analysis would still be the same, whether or not he's shown torture to believe and the immigration judge and the board found looking at the merits of, of that, that he hasn't shown acquiescence. So at the end of the day, it's really a distinction without a difference because petitioners in the same place have to show the same burden. Um, it's the same standard of relief and because the movability, as I said, is not an issue, he's still a criminal alien and the court can only look at any callable questions of law or constitutional claims. Thank you very much. I think you have about 30 seconds on the clock. Okay. If you, if there are no further questions, um, I would just ask the court to deny the petition for review for all the reasons stated in our brief and for those stated, um, today here, thank you. I'd like to address two main points that the government brings up first as to that did not include the words intentionally. And then after the fact, went and added it in, goes to our argument that the immigration judge relied on intentional government acquiescence, which is not the standard. And the BIA affirmed that error, which requires, um, this Court, uh, which is an error of law that, that should be, uh, vacated. Um, but second, going to the government's argument, uh, about, uh, the firearm conviction, Mr. Murillo's removability. Mr. Murillo is removable, uh, in that he overstayed his visa. Um, this Court noted in Gomes that, uh, the firearm offense for which he was convicted is not a Federal crime of violence. And further, uh, we raised the firearm arguments, uh, before the immigration judge. You can see this in the record at 179 through 184. Didn't you withdraw it on this opinion? No, Your Honor. The arguments were not withdrawn. Um, but rather, they were futile to raise before the Board in light of, at the time, existing Supreme Court precedent, um, or, excuse me, existing statutory law, uh, which was overturned by the Supreme Court, uh, were declared invalid only four days after the BIA opinion was issued in this case in Sessions v. Amaya. So in the sense that the BIA, um, has no authority to rule on constitutional questions of law, uh, and ultimately, uh, the — the agency was bound by, at the time, Section 16b, um, it would have been futile to continue to press those arguments below. And so now, now and after Amaya, um, Mr. Murillo can rightfully bring those claims, and we ask this Court to remand so that, uh, the agency can consider his withholding claim outright. Thank you. Thank you very much. We'll take the matter, uh, under advisement.